UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>CAREY GONYER ) | 1:12-cr-00021-JAW |

**ORDER ON DEFENDANT'S MOTION *IN LIMINE* REQUESTING *DAUBERT* HEARING TO DETERMINE THE ADMISSIBILITY OF THE TESTIMONY OF GOVERNMENT WITNESS STEVEN JENSEN, M.A.**

The Court declines to allow the Government to present an expert on sexual predator grooming techniques in its case-in-chief in a jury trial on charges of sexual exploitation of children and possession of child pornography.

**I.    STATEMENT OF FACTS**

**A.    The Defendant's Motion *in Limine***

With trial looming on charges of sexual exploitation of children and possession of child pornography, Carey Gonyer moved on July 2, 2012 for a *Daubert*[1] hearing to determine whether Steven Jensen, M.A., a Government expert witness, should be allowed to testify regarding his opinions about the grooming behavior of sexual abusers. *Def.'s Mot.* in Limine *Requesting* Daubert *Hr'g to Determine the Admissibility of the Test. of Gov't Witness Steven Jensen, M.A.* (ECF No. 62). The Government responded on July 10, 2012. *Gov't's Resp. to Def.'s Mot.* in Limine *Requesting* Daubert *Hr'g to Determine the Admissibility of the Test. of Gov't Witness Steven Jensen, M.A.* (ECF No. 75) (*Gov't's Resp.*). Mr. Gonyer replied and later supplemented his reply. *Def.'s Reply to Gov't's Resp. to Mot.* in Limine

---
[1]    *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

*Regarding the Admissibility of Gov't Witness Steven Jensen, M.A.* (ECF No. 80); *Supplement to Def.'s Reply to Gov't's Resp. to Mot.* in Limine *Regarding the Admissibility of the Test. of Gov't Witness Steven Jensen, M.A.* (ECF No. 83). The Court held a hearing on July 20, 2012 in which Mr. Jensen testified by videoconference.

### B. Steven Jensen's Testimony

The Government alleges that Carey Gonyer sexually molested a 15- to 16-year-old minor and in the course of this abuse prevailed upon the minor to supply him with pictures of the minor's penis. *Gov't's Resp.* at 1. In addition, the Government says that Mr. Gonyer supplied the minor with cigarettes, adult pornography, and bought him gifts. *Id.* As part of its case-in-chief, the Government proposed to introduce the testimony of Steven Jensen, M.A. *Id.* Mr. Jensen is the Clinical and Administrative Director of the Center for Behavioral Intervention in Beaverton, Oregon. *See Gov't's Resp.* Attach. 1 (Curriculum Vitae of Steven Jensen). He holds a Master's Degree in Psychology and has been evaluating and treating sex offenders for decades. *Id.*

Mr. Jensen would testify about a process called "grooming," whereby the sexual predator selects and seduces a minor victim. He said that grooming consists of four stages: (1) assuming a position of trust, such as a coach, Sunday school teacher, or the like; (2) assessing whether the potential victim is attractive and vulnerable; (3) desensitizing the victim by gifts, attention, friendship, game-playing, and generally making the victim feel wanted and special; and, (4) avoiding detection

by reminding the victim that, if the true nature of the relationship is revealed, he or she has a lot to lose, including public humiliation and embarrassment. The desensitizing stage includes systematic and gradually escalating touching. The avoidance-of-detection phase often includes threats and coercion. These techniques are particularly effective where an adolescent male is involved in a sexual relationship with an older male because he fears the consequences of exposure among his peers. He also would testify that compromising photographs and videotapes of children are used in the grooming process by the predator as a sexual stimulant and as a means of blackmail to discourage the minor from reporting the abuse. The Government proposes to present Mr. Jensen only for descriptions of common sexual predator grooming strategies, but it does not intend to offer any expert testimony applying these general concepts to the facts in Mr. Gonyer's case.

On cross-examination, Mr. Jensen agreed that his testimony flowed largely from his years of experience as a sex counselor. He said that grooming has been studied in various articles but did not name any. Although he mentioned that the published articles would be available, he testified that the bulk of the data and information from which he gleaned his professional opinions would not be, because the records of the Center's clients are strictly confidential. He acknowledged that he had never written a published article in a peer-reviewed journal on this topic nor submitted one for publication.

Mr. Jensen conceded that some people, who are not sexual predators, engage in activity similar to his description of some of the four grooming stages. An adult

in a position of trust, such as a coach or scout leader, may become extremely friendly with an adolescent, encourage that person, devote particular attention to the minor, and make him or her feel special, without having any ulterior and improper motives. Mr. Jensen agreed that he did not have any statistics or data to detect false positives—namely, those persons who act in ways that Mr. Jensen would describe as grooming, but who are not sexual predators.

## II. DISCUSSION

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. To be admissible under Rule 702, an expert's proposed testimony must be reliable and must fit the facts in the case. *Daubert*, 509 U.S. at 597; *United States v. Pena*, 586 F.3d 105, 110 (1st Cir. 2009). It is not essential that an expert be a scientist. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). But if an expert witness is going to rely "solely or primarily on experience, the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." FED. R. EVID. 702 advisory committee's note to the 2000 amendments.

4

In this District, the path for this Court's analysis has been broken by Judge Hornby in a thoughtful opinion, *United States v. Raymond*, 700 F. Supp. 2d 142 (D. Me. 2010), in which he declined to allow expert testimony about the behavioral patterns of child molesters and their victims.  Although the Government seeks to distinguish the facts in *Raymond* from the facts in this case, the Court views Mr. Jenner's proposed opinions as substantially similar to the opinions that Judge Hornby excluded in *Raymond*.[2]  Both Mr. Jenner and Mr. Lanning, the expert in *Raymond*, based their expert views on their professional experience, not on scientific research or data.  *Id.* at 147.  Although this type of testimony may be admissible under *Kumho*, it runs the risk of being the *ipse dixit* of the expert against which the Supreme Court has warned.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1999).  Moreover, Mr. Jenner's experience-based opinions and his inability to cite an error rate for false positives make his testimony virtually impregnable for purposes of cross-examination.  *Raymond*, 700 F. Supp. 2d at 146-47.  The Court concludes that Mr. Jenner's proposed testimony does not meet *Daubert*'s reliability requirement.

Whether his proposed testimony fits with the facts in this case is even more problematic.  As in *Raymond*, the Government does not propose to have Mr. Jenner relate his general opinions about grooming by sexual predators to the facts in this

---

[2]   The Government's main point is that in *Raymond*, the expert was prepared to testify about why minor victims tend to fail to report the abuse, an issue not present here.  Although Judge Hornby raised the possibility that this aspect of the expert's testimony might be allowed on rebuttal, he concluded that the expert "cannot be used as affirmative proof of truthfulness." *Raymond*, 700 F. Supp. 2d at 152.  The Government is correct that the expert in *Raymond* was prepared to testify about delayed reporting, but he was also offered as an expert on the grooming phenomenon and, on this aspect of his expert opinion, his testimony was virtually identical to Mr. Jenner's.  *Id.* at 144 (describing the methods of seduction of minor victims).

5

case. *Id.* at 149-50. Again, this type of general opinion expert testimony may be admissible. FED. R. EVID. 702 advisory committee's note to the 2000 amendments. But, as Judge Hornby noted, such generalized expert testimony is properly used to educate a jury about general "rules and principles describing widely recognized and highly predictable and verifiable phenomena." *Id.* at 150 n.12. The techniques of a sexual predator in selecting and seducing a victim are dissimilar to the instances where expert testimony on general principles has been allowed.

Moreover, Mr. Jenner's proposed testimony is not benign. First, it runs the risk that the jury will view his opinions as testimony about Mr. Gonyer's intent in violation of Rule 704. FED. R. EVID. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone"). Recognizing Rule 704(b)'s prohibition, the Government stoutly disavows any desire to introduce Mr. Jenner's testimony on the issue of Mr. Gonyer's intent. It is true that the Government does not propose to have Mr. Jenner testify directly about what Mr. Gonyer was thinking. But the testimony skims the edges of Rule 704(b). Mr. Jenner's testimony would allow the jury to place Mr. Gonyer's relationship with the victim into the stages of predatory seduction. Thus, for example, the jury would be able to see that Mr. Gonyer's initial friendly approach to the victim was not innocent but the first deliberate step in selection and seduction.[3]

---

3  The Court acknowledges that this risk could be minimized by a limiting instruction.

Second, Mr. Jenner's testimony runs the risk that the jury will use his opinions to draw improper conclusions about Mr. Gonyer's character in violation of Rule 404(a)(1).[4] FED. R. EVID. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait"). Here, the expert testimony is untethered to the facts in this case. For example, Mr. Jenner would say that sexual predators use compromising photographs and videotapes of the victims to blackmail them into silence, but there may be no evidence in this case of any such threats against the victim, thus allowing the jury to attribute such actions to Mr. Gonyer because "sexual predators like him" do such things.

Third, it runs the risk of creating a false sense of expert infallibility in an area of testimony that has not been subjected to scientific scrutiny. *Raymond*, 700 F. Supp. 2d at 150 ("a toxic mixture of purported expertise and common sense").

Finally, to describe the attributes of a sexual predator and to invite the jury to so label a defendant poses Rule 403 problems. FED. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice [or] misleading the jury").

It is true that a number of courts have sanctioned this type of testimony. *See United States v. Batton*, 602 F.3d 1191 (10th Cir. 2010); *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006); *United States v. Forrest*, 429 F.3d 73, 80-81 (4th Cir.

---

[4] The public's attitude toward the people who sexually victimize minors is understandable abhorrence. Nevertheless, the issue here is whether Mr. Gonyer committed the crimes the Government has charged, and the danger is that the label of sexual predator is so powerful it deprives the Defendant from receiving a fair trial about whether the label should properly be applied to him.

7

2005); *United States v. Hayward*, 359 F.3d 631, 635-37 (3d Cir. 2004); *United States v. Romero*, 189 F.3d 576 (7th Cir. 1999); *Light v. Martel*, No. 09-00177 JSW, 2009 U.S. Dist. LEXIS 115715, at *18-26 (N.D. Cal. Nov. 30, 2009); *Morris v. Texas*, 361 S.W.3d 649 (Tex. Crim. App. 2011). However even those courts that have allowed this testimony have had qualms about its admissibility. *See Forrest*, 429 F.3d at 81 ("The admission of this testimony is troubling").

*Romero* is the seminal case. But, as Judge Hornby pointed out, the 1999 *Romero* Court viewed the expert testimony in that case as critical for the jury to understand that not every child abuser is "'a dirty old man in a wrinkled raincoat' who snatches children off the street as they wait for the school bus." *Raymond*, 700 F. Supp. 2d at 151 (quoting *Romero*, 189 F.3d at 584). But, more than a decade since *Romero*, Judge Hornby observed, "[t]oday's news unfortunately is replete with stories of child sexual abuse involving priests and pastors, teachers and doctors, family members, and, in fact, almost every kind of trusted and seemingly trustworthy person." *Id.*

Furthermore, the appellate courts have addressed whether the admission of this type of expert testimony amounted to an abuse of trial court discretion or harmless error, not whether the testimony should be admitted in the first place. A number of trial courts have disallowed such testimony. *See United States v. Schneider*, No. 10-29, 2010 U.S. Dist. LEXIS 99662 (E.D. Pa. Sept. 22, 2010); *Bowen v. Haney*, 622 F. Supp. 2d 516, 544 (W.D. Ky. 2008) (stating that "the view of the Kentucky courts concerning the exclusion of pedophile profile testimony is by far

and away the majority view among all the state courts, which routinely exclude expert testimony of the nature initially offered through Dr. Gardner"); *United States v. Thomas*, No. CCB-03-150, 2006 U.S. Dist. LEXIS 3266 (D. Md. Jan. 13, 2006) (in bail context).

In conclusion, the Court excludes Mr. Jenner as a proposed expert in the Government's case-in-chief. With this ruling, the Court adds three important caveats. First, like Judge Hornby, the Court cautions that its exclusion of Mr. Jenner's proposed testimony should not be interpreted as expressing skepticism about whether the phenomenon of grooming exists. *Raymond*, 700 F. Supp. 2d at 155. To the contrary, Mr. Jenner's testimony is a matter of common sense; the Court's exclusion is a function of its obligation to enforce the rules of evidence in the matters pending before it. This leads to the next point. If the victim in this case testifies to activity by Mr. Gonyer that Mr. Jenner would have opined was "grooming," the Court will not prohibit the Government from arguing during its closing that the facts justify a conclusion that Mr. Gonyer was grooming the victim. *Id.* at 150 ("The 'grooming' article also leads me to conclude that many of Lanning's opinions are actually common sense observations that the government can simply argue in closing"). Finally, like Judge Hornby, the Court does not eliminate the possibility that the Government might be allowed to call Mr. Jenner in rebuttal, depending upon what Mr. Gonyer offers in defense. *Id.* at 156.

## III.   CONCLUSION

The Court GRANTS the Defendant's Motion *in Limine* Requesting *Daubert* Hearing to Determine the Admissibility of the Testimony of Government Witness Steven Jensen, M.A. (ECF No. 62).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 24th day of July, 2012